George R. Grayson, Appellant, v. Pennsylvania
Railroad Company, Appellee.

Gen. No. 45,855.

Opinion filed February 10, 1953. Rehearing denied March 24, 1953. Released for publication March 24, 1953.

JOSEPH D. RYAN, LOUIS P. MILLER, and ARTHUR RYAN, all of Chicago, for appellant.

THEODORE SCHMIDT, P. J. CRONIN, and CHARLES F. WHITE, all of Chicago, for appellee; EDWARD J. FLEMING, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff, a stationary engineer employed by defendant in its power plant at Toledo, Ohio, brought this suit for personal injuries sustained by him on March 19, 1948, when a smokestack fell and he was struck by a falling steel plate. The jury returned a verdict of not guilty. The usual post-trial motions were made and denied, and judgment was entered on the verdict, from which judgment plaintiff appeals.

It is not contended that the verdict is against the manifest weight of the evidence, nor does plaintiff complain of the rulings of the court, except in two respects, first, that the court erred in striking certain testimony as to guy wires, and second, that it erred in denying plaintiff the right to amend his pleadings to allege negligence with respect to the insufficiency of

409

the guy wires. The complaint alleged that the smoke-stack rested on a breeching plate, and that this had been negligently installed and maintained so that it became insecure and defective; in other words, that the foundation upon which the smokestack rested was not safe. Defendant denied this allegation, and the case was tried on that issue. In support of his position plaintiff produced the testimony of witnesses both by deposition and in person. They testified that the foundation upon which the stack was set was in bad condition. Defendant's witnesses, on the other hand, testified that the stack rested on a good and secure foundation, but that a wind of unparalleled magnitude, reaching as high as 87 miles per hour, was responsible for the fall. This issue was presented to the jury, which found against plaintiff. That verdict is sustained by ample evidence. While plaintiff does not contend that the verdict is against the manifest weight of the evidence, there are intimations in his brief of a miscarriage of justice. Such intimations cannot be considered by us. The case must be decided solely on the question of the admissibility of certain testimony and the question of pleading.

The testimony denied admission is that of a witness who was presented in rebuttal. He was an expert witness who had no personal knowledge of the structure in question. After testifying as to the general requirements of a foundation upon which a smokestack of such size should be erected, he made the following statement: "It is customary on a stack one hundred feet high to put on at least eight guys." Counsel for defendant moved to strike this testimony, on the ground that it was not proper rebuttal evidence and was not based on any charge in the complaint. The court, after considerable colloquy and argument, struck the testimony with respect to the customary requirement of at least "eight guys."

██ ██ An examination of the complaint supports defendant's contention that it contained no general allegation of negligence, and that it rested squarely on the proposition that the breeching plate or foundation was insecure. It is clear from a reading of the record that the parties so understood the issue. It is also clear that this allegation with respect to the foundation was not intended to and could not be construed to include a charge of an insufficiency of guy wires. Guy wires are not considered a part of the foundation. This is established by the testimony of plaintiff's own witnesses, one of whom said that it did not make any difference how many guy wires there were, "if the foundation was rotten, it would not stay up." The expert witness who had referred to the customary number of guy wires testified that: "The placing of the guy cables on the stack only keep it from shifting. The support must be in the foundation." Witnesses both for plaintiff and defendant in describing the structural character of the stack, described the guy wires, but it is clear that up to the time of the rebuttal testimony, there had been no suggestion that the guy wires were inadequate. There is no allegation in the complaint which would support such a charge, nor was the testimony proper in rebuttal.

 The only remaining question is whether the court erred in denying plaintiff the right to amend his complaint so as to include a charge that the guy wires were insufficient. It was within the court's sound discretion to allow such an amendment. *McGlaughlin v. Pickerel*, 381 Ill. 574, 582–3; *Deasey v. City of Chicago*, 412 Ill. 151; *Moneta v. Hoinacki*, 394 Ill. 47, 59. It has been recognized for a great many years that justice should not be defeated because of some technical or even substantial failure to plead. Courts are and should be liberal in the allowance of amendments, but the circumstances of each case control the exercise of

411

their discretion. A failure to exercise that discretion properly may work an injustice to defendant as well as to plaintiff. In this case, the injury occurred in Toledo, and the case was tried in Chicago. Practically all the witnesses resided in Toledo. Depositions of six witnesses were taken there on June 12, 1949. The trial commenced September 20, 1951. Defendant concluded its case on September 27th, whereupon two witnesses were presented in rebuttal. At the conclusion of their testimony, counsel for plaintiff said to the court: "I have one short witness, a structural, architectural engineer, who I want to ask about six or eight questions. I would like to ask the indulgence of the court to let me put him on in the morning. It won't take more than ten or fifteen minutes." The following day he produced the expert witness whose testimony we have discussed. After the court indicated that he would sustain the objection to that part of his testimony with respect to the customary number of guy wires, plaintiff made his motion to amend his complaint. The court denied this motion, saying: "And the reason is that throughout the entire course of this trial, which has lasted eight days, there has never been any claim made by plaintiff that there were an insufficient number of guy wires." A reading of the testimony, the colloquy, and the statements of the court concerning it, make it clear that no issue was raised with respect to the guy wires at any time during the trial. Witnesses produced by plaintiff had made an examination of the structure, including the guy wires. Moreover, the matter was so palpably subject to investigation, that any question concerning it should have been presented before or at least early in the trial, and defendant given an opportunity to defend. The testimony in question does no more than suggest the prospect of an additional charge of negligence. It could not serve as a basis for submission of an issue on the adequacy of

the guy wires. It would have been improper, on this scanty piece of testimony taken in the last few minutes of trial, to permit an amendment of the pleadings, raising a new issue which may have involved the taking of depositions or the procuring of witnesses from Toledo. The ruling of the court, striking the testimony in question and denying plaintiff leave to amend, was correct.

*Judgment affirmed.*

ROBSON, P. J., concurs.

TUOHY, J., took no part.